UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **VERNON FRED RAMSEY**<br>     **LA. DOC #87034**<br>**VS.** | **CIVIL ACTION NO. 3:15-cv-0487**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **NURSE TUCKER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Vernon Fred Ramsey, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 27, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Union Parish Detention Center (UPDC) and complains that he was wrongly confined to lock-down when he refused to take a tuberculosis test. He sued Nurse Tucker and Corrections Officer Andrews praying for compensatory damages for pain, suffering and emotional stress. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

*Background*

On February 3, 2015, Nurse Tucker and Corrections Officer Andrews entered plaintiff's dormitory to give tuberculosis (TB) tests[1] to the inmates. Plaintiff advised Tucker that he has, in

---

[1] The PPD (purified protein derivative standard) skin test is a method commonly used to diagnose tuberculosis. The test site (usually the forearm) is cleansed. The PPD extract is then injected under the top layer of skin, causing a blister to form on the skin. The reaction generally takes 48 - 72 hours to develop. A reaction is measured in millimeters of hard swelling (induration) at the site. There is a very small risk of severe redness and swelling of the arm in

the past, had some unspecified "reaction" to the test. She advised that he would be "put in the hole" if he refused the test. Officer Andrews then ordered plaintiff to cease talking, placed plaintiff in lock-down, and charged him with defiance and aggravated disobedience. As of the date the complaint was filed, plaintiff was not taken before the prison disciplinary court.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v.*

---

people who have had a previous positive PPD test and who have the test again. There also have been a few cases of this reaction in people who have not been tested before. Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Encyclopedia http://www.nlm.nih.gov/medlineplus/ency/article/003839.htm

*Iqbal,* 556 U.S. 662, 678 (2009).

**2. *TB Testing***

Plaintiff implies that rights guaranteed to him by the United States Constitution were violated when the defendants gave him the choice of either submitting to TB testing or placement into isolation upon his entry into the UPDC. While not specified, it may be assumed that petitioner complains that his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment, or, his rights to due process as guaranteed by the Fourteenth Amendment were violated.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment; in order for a convicted prisoner to prevail on a claim that his Eighth Amendment rights were violated, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Estelle*, 97 S.Ct. at 291-92. The Fourteenth Amendment prohibits the taking of life, liberty, or property without due process.

Prisons have a "compelling" interest in preventing the spread of tuberculosis, a highly contagious and deadly disease. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). Thus, a prison's policy of forcibly testing, screening, and treating inmates for tuberculosis comports with the Constitution. *McCormick*, 105 F.3d at 1062, footnote 1, citing *Karolis v. New Jersey Dept. Of Corrections*, 935 F.Supp. 523, 527-28 (D.N.J.1996) (tuberculosis is a more serious threat than it was in the past; a "confined prison setting is precisely the type of environment where TB is likely to spread easily and rapidly"; state has "strong interest" in

"diagnosing and treating inmates"); and, footnote 2, citing *Mack v. Campbell*, 948 F.2d 1289, 1991 WL 243569 (6th Cir.1991) (administrative segregation for refusing tuberculosis screening test does not violate due process); *Rhinehart v. Gomez*, 1995 WL 364339, *3-*4 (N.D.Cal.1995) (*Washington v. Harper* justifies prison policy of involuntary testing and treatment for tuberculosis). See also *Karolis v. New Jersey Dept. of Corrections*, 935 F.Supp. 523, 527-28 (D.N.J.1996) (involuntary administration of tuberculosis test to prisoner upheld against challenge under Religious Freedom Restoration Act because there is a compelling state interest in stopping the spread of tuberculosis).

Furthermore, the Louisiana Administrative Code mandates TB testing for incoming inmates and admits of no exceptions. See 51 La. ADC, Pt. XVIII, §301 which provides:

> A. Any person entering any Louisiana state prison as an inmate for 48 hours or more shall be screened for tuberculosis with a purified protein derivative skin test, five tuberculin unit strength, given by the Mantoux method, and a chest X-ray if the skin test is positive. If the individual is known to be infected with the human immunodeficiency virus (HIV) or has acquired immunodeficiency syndrome (AIDS), he or she shall be required to have a chest X-ray in addition to a skin test for tuberculosis, regardless of the skin test results. If an individual has a positive skin test or positive X-ray, he or she shall be evaluated by a physician to determine whether he or she should receive a course of chemotherapy for tuberculosis. If evaluation is desired before 48 hours, a chest X-ray is acceptable for screening.

> B. Any person entering any Louisiana parish jail as an inmate for 14 days or more shall be screened for tuberculosis, where funding is available, with a purified protein derivative skin test, five tuberculin unit strength, given by the Mantoux method, and a chest X-ray if the skin test is positive. If the individual is known to be infected with the human immunodeficiency virus (HIV) or has acquired immunodeficiency syndrome (AIDS), he or she shall be required to have a chest X-ray in addition to a skin test for tuberculosis, regardless of the skin test results. If an individual has a positive skin test or positive X-ray, he or she shall be evaluated by a physician to determine whether he or she should receive a course of chemotherapy for tuberculosis. If evaluation is desired before 48 hours, a chest X-ray is acceptable for screening.

Plaintiff refused to comply with this regulation and was therefore placed in isolation and charged with a violation of prison rules. Plaintiff has shown neither the violation of the Eighth or Fourteenth Amendments. First of all, it is not clear whether his placement in lock-down was entirely punitive. The facts alleged suggest that his confinement could be explained as the isolation of an inmate who posed a potential health problem. In any event, the alleged punishment complained of was neither cruel nor unusual.

Further, he has not, nor can he demonstrate a violation of Due Process. By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In order to invoke procedural due process protections, a prisoner must first establish that he has been subjected to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). On the basis of *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights); *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir.1996) (federal prisoner's detention for three months in administrative segregation did not constitute a significant, atypical hardship which constituted a deprivation of a liberty interest). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998)

(per curiam). It stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

In short, plaintiff's complaint, whether asserting violations of the Eighth or Fourteenth Amendments, is frivolous.

### *3. 42 U.S.C. §1997e(e)*

Finally, plaintiff prays for compensatory damages for pain, suffering and emotional stress. However, he does not allege that he sustained any physical injury as a result of the circumstances complained of. Title 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997)

Plaintiff has alleged no physical injury and the undersigned can imagine no such injury resulting from the facts thus far alleged. Since plaintiff has alleged no physical injury resulting from the actions of the defendant, his claim for monetary damages as compensation for mental anguish and stress is legally without merit and subject to dismissal as frivolous.

### *4. Conclusion and Recommendation*

Based on the foregoing,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED**

**WITH PREJUDICE** as frivolous.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, May 11, 2015.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**